IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| LINDA L. LAMB, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 4:05CV01636 SWW |
| | * |
| JO ANNE B. BARNHART, | * |
| Commissioner, Social Security | * |
| Administration, | * |
| | * |
| Defendant. | * |

**Memorandum Opinion and Order**

Plaintiff Linda L. Lamb seeks judicial review of the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income ("SSI"). The Court finds, for the reasons stated below, that the decision should be affirmed.

**Background**

Linda L. Lamb was born on September 16, 1959. She has an eighth-grade education and last worked as a hand packager for a liquor distributorship. Before that, she painted houses for about eight years, from 1989 to 1996. (Tr. 77, 187-88, 209-10) Lamb testified she did not work from 1997 through October 2002 because she had a live-in boyfriend who took care of her. When he left her, she applied for SSI. Lamb testified she stopped working because of difficulty with breathing. (Tr. 179-81)

Lamb applied for SSI on September 6, 2003, alleging she became disabled on October 1, 2002, due to chronic bronchitis, asthma, emphysema, back problems, and nerves. (Tr. 47B-47D,

50, 86)  After her application was denied initially and upon reconsideration, Lamb requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on December 8, 2004.  (Tr. 171)  Lamb, who was represented by an attorney, appeared and testified.  She said that about six months earlier, she had twenty cats living in her mobile home but now had only four.  (Tr. 181)  She said she smoked marijuana every day for about twenty years but had stopped in the Spring of 2004.  (Tr. 182, 195)   Lamb testified that after having smoked two to three packs of cigarettes a day, she is down to smoking a half a pack of cigarettes a day.  (Tr. 178, 189)  At the end of the hearing, the ALJ determined that Lamb should have a pulmonary function test.  A supplemental hearing was held on April 7, 2005, and Lamb again appeared, represented by an attorney, and testified.  (Tr. 206)  A vocational expert ("VE"), Ken Waits, also appeared and testified.

On July 5, 2005, the ALJ issued a decision in which he found that Lamb was not disabled within the meaning of the Social Security Act.  (Tr. 15) He found that Lamb has severe chronic bronchitis, obesity, and an intermittent depressed mood.  (Tr. 14) However, the ALJ determined that Lamb's impairments were not severe enough to meet or medically equal one of the impairments listed in the listing of impairments.  (Tr. 12)  Moreover, the ALJ found that Lamb retained the residual functional capacity ("RFC") to perform a slightly narrowed range of medium work. He found she could return to her past relevant work ("PRW") as a warehouse packager. (Tr. 14) After the Appeals Council denied Lamb's request for review, she filed a timely complaint pursuant to 42 U.S.C. § 405(g).  Lamb argues the decision of the ALJ is not based upon the substantial evidence of the record as a whole.

**Discussion**

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Tellez v. Barnhart,* 403 F.3d 953, 956 (8th Cir. 2005).

> 'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.' In reviewing the Commissioner's decision, we do not substitute our own view of the evidence for that of the Commissioner. Whether the record supports a contrary result or whether we might decide the facts differently is immaterial. We must affirm the Commissioner's decision if the findings are supported by substantial evidence.

*Id.*

The ALJ considered Lamb's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(i)(2005). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. 20 C.F.R. § 404.1520(b).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(ii) and (c). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. 20 C.F.R. § 404.1520 (a)(iii) and (d). If so, and the duration requirement is met, benefits are awarded. *Id.*

If claimant does not meet or equal a Listing, then a residual functional capacity assessment is made based on all the relevant medical and other evidence. 20 C.F.R.

§ 404.1520(e).  This residual functional capacity assessment is utilized at Steps 4 and 5.  *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(a)(iv).  If so, benefits are denied. 20 C.F.R. § 404.1520(f).

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  20 C.F.R. § 404.1520(a)(v).  If so, benefits are denied; if not, benefits are awarded.  *Id.*; 20 C.F.R. §404.1520(g).

The Commissioner and this Court must apply the five-step analysis in evaluating alleged disabilities.  The Commissioner, adopting the findings of the ALJ, held that Lamb retained the residual functional capacity to perform her past relevant work as a hand packager.  Lamb contends there is no substantial evidence to support this determination.

The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of all treating physicians and others, and claimant's own descriptions of her limitations.  *Baldwin v. Barnhart,* 349 F.3d 549, 556 (8th Cir. 2003).  Before determining a claimant's RFC, the ALJ first must evaluate the claimant's credibility.  *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001).

> In evaluating subjective complaints, the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions.  Subjective complaint may be discounted if there are inconsistencies in the evidence as a whole. . . . The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.

*Id.*

Lamb testified she suffers from shortness of breath, pain in her lower back, and

intermittent depression. (Tr. 189-192, 197) The medical evidence shows she was hospitalized on February 24, 2003, for depression. She said her husband had left her and her dog had died. She was living with her boyfriend at the time. She denied any acute or chronic pain, or substance abuse, but did admit to marijuana use, and her urine drug screen was positive for marijuana. Lamb was discharged on February 26, 2003. (Tr. 109-110)

Lamb testified she takes Zoloft for depression. (Tr. 197) She also takes medication for her asthma and emphysema. (Tr. 198) She testified she can bend and stoop, lift five to ten pounds, but her back begins to hurt after thirty minutes of standing. (Tr. 191-193) She testified she shoots pool once or twice a week at a saloon located about three-fourths of a block from her home, and has about six beers when she is there. (Tr. 182-83, 193, 196) She also testified that she attended a "biker event" recently. (Tr. 183)

The ALJ concluded Lamb's statements and testimony were only slightly credible, and that she had enhanced the extent of her functional loss, particularly her breathing problems. He observed that at the hearing Lamb's "verbal and nonverbal actions did not show she was experiencing debilitating pain or any other sensations that would render her disabled." (Tr. 13) The Court finds the ALJ made a full and proper credibility analysis. *See Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004)(ALJ not required to discuss each *Polaski* factor as long as analytical framework is recognized and considered).

Lamb saw Dr. Dixon in December 2003 about her breathing problems and last saw him in March 2005. (Tr. 170, 176) The pulmonary function studies ordered by the ALJ and conducted on February 2, 2005, indicate Lamb has moderate airway obstruction. (Tr.165) According to the Medical Source Statement of Ability To Do Work-Related Activities

(Physical), Lamb could occasionally lift and carry 20 pounds, stand and/or walk less than two hours in an eight-hour work day, must periodically alternate sitting and standing, and is limited in the lower extremities in pushing and/or pulling.  She must not climb, crouch, crawl, or stoop, and only occasionally balance or kneel.  Her reaching, handling, fingering, and feeling is limited to occasionally, and she needs reading glasses.  (Tr. 161-63)  Two different Disability Determination physicians examined Lamb, one on October 13, 2003, and one on February 2, 2005.  They completed range of motion studies, both finding Lamb's range of motion and limb function okay.  (Tr. 119-125, 154-159)  The ALJ concluded that the Medical Source Statement of Ability To Do Work-Related Activities (Physical) was "internally inconsistent with the range of motion studies and the Residual Functional Capacity Assessment in general," and assigned it little weight.  (Tr. 11)

The ALJ further found that Lamb's occupational base was not eroded by her mental problems, noting the chronic nature of her problems and the fact that she has been able to function in spite of her alleged mental problems.

The vocational expert testified that based on the records made available to him and Lamb's testimony at the second hearing, Lamb's house painting job involved medium physical demand with an SVP[1] of seven, and her hand packager job was medium in physical demand with an SVP of two.  The ALJ asked the vocational expert the following question:

> [A]ssume that we have a younger individual, or mid-forties.  Those [sic] individual has a limited or eighth-grade education.  Done the same or similar type work that you've just described, but this individual has some physical limitations,

---

[1] Specific Vocational Preparation (SVP) is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. Dictionary of Occupational Titles 1009 (4th ed. Rev. 1991).

6

>   primarily as a result of respiratory problems, and they would be limited in some of their physical capabilities.  They would be limited to where they could only lift or carry 20 pounds occasionally.  Standing or walking [inaudible] . . . Less than two hours . . . out of any eight-hour workday.  They could periodically alternate sitting and standing.  They would be limited in pushing and pulling in the lower extremities, and they could never climb, never crouch, never crawl, never stoop, but they could occasionally balance and knee.  They would be limited in reaching in all directions, including overhead.  They'd be limited in handling, limited in fingering, limited in feeling, which means they could occasionally reach, handle, finger and feel.  And they would have some environmental limitations because of the respiratory problems where they should limit their exposure to dust, humidity, wetness, fumes, odors, chemicals, and . . . gases.  Now, based on those physical restrictions, are there any - would this hypothetical individual be able to perform any of the past work done by Ms. Lamb?

The vocational expert answered "No."  (Tr. 211-12).  He also said there would not be other jobs in the national economy that the hypothetical individual could perform.

The ALJ found Lamb could return to her past relevant work as a warehouse packager," per V.E. testimony."  (Tr. 14) Lamb argues this finding is contrary to the vocational expert's testimony.  The government asserts that the ALJ's erroneous statement was harmless error.  The ALJ determined that Lamb had the RFC to perform a "slightly narrowed range of medium work" and therefore could return to her past relevant work as a warehouse packager.  Because medium work activity is defined as requiring lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds, 20 C.F.R. § 416.967(c), and the hypothetical question limited the work activity to lifting or carrying 20 pounds occasionally, it is clear that the ALJ did not base his finding that Lamb could return to her PRW on the above hypothetical and the vocational expert's testimony.  Further, vocational expert testimony is not even necessary at the fourth step of the sequential evaluation.  *See Lewis v. Barnhart,* 353 F.3d 642, 648 (8th Cir. 2003)(VE testimony not required at step 4; therefore, claim that ALJ posed a defective hypothetical to the VE is moot): *Banks v. Massanari,* 258 F.3d 820, 827 (8th Cir.

2001)(VE testimony is not required at step four where a plaintiff retains the burden of proving she cannot perform PRW); *Johnston v. Shalala,* 42 F.3d 448, 452 (8th Cir. 1994)(VE testimony is only required when the burden shifts to the Commissioner and the plaintiff has a nonexertional impairment).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  *See, e.g., Pratt v. Sullivan,* 956 F.2d 830, 833 (8th Cir. 1992).  Even if the Court may have weighed the evidence differently, it may not reverse the Commissioner's decision when there is enough evidence in the record to support either outcome.  *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir. 1992).  The Court finds the ALJ's opinion sets out the correct standards and cites substantial evidence in the record to support his conclusions.

## Conclusion

IT IS THEREFORE ORDERED that the final determination of the Commissioner be affirmed and plaintiff's complaint is dismissed with prejudice.

DATED this 18th day of December 2006.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE